## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
    )
v.    )
    )  **CRIM NO. 21-MJ-622**
CODY MATTICE,    )
    )
    Defendant.    )

## DEFENDANT CODY MATTICE'S
## REQUEST FOR PRETRIAL RELEASE

Defendant's Request for Pretrial Release Defendant, Cody Mattice, by and through his attorney, John L. Machado, and respectfully requests that this Court release Mr. Mattice on whatever conditions it deems necessary to ensure his return to court and safety of the community.

## Background

Mr. Mattice is before the Court charged with multiple counts arising out of his alleged participation in the activities that occurred at the U.S. Capitol on January 6, 2021. The Criminal Complaint alleges Mr. Mattice traveled from Brockport, New York and participated in the events that unfolded that day. It is alleged that a person purported to be Mr. Mattice removed a police barrier and sprayed a chemical agent at law enforcement. The complaint does not identify the purported chemical agent

1

used. The complaint does not allege that Mr. Mattice was a leader or organizer of the event or that he is associated with any violent or extremist organizations.

On October 7, 2021, Mr. Mattice, with counsel, Wedade Abdallah from the Public Defender's Office of the Federal Public Defender's Office in Rochester, New York, appeared before the Honorable Mark Pederson for the initial appearance in a Rule 5(c)(3) hearing. The government moved for, and the court granted, detention of Mr. Mattice based upon risk of flight and danger to the community. At that time, a detention hearing was set for October 12, 2021.

On October 12, 2021, the court held a detention hearing. The government withdrew its request as to risk of flight and only proceeded on detention based upon danger to the community. The government proceeded via proffer. Both parties provided argument and rebuttal arguments. During the hearing, the government provided the video to the court to review *in camera*. The court continued the hearing until October 15, 2021, to allow for the review of the video by the court and defense counsel.

On October 15, 2021, after hearing additional arguments from the parties, the court denied the motion for detention and set release conditions. The court accordingly set release conditions to ensure Mr. Mattice's return and the safety of the community. A copy of that order is attached hereto as Exhibit A. The government

requested a stay of the release order to allow for the U.S. Attorney's Office to file an emergency stay in the District of Columbia.

On October 18, 2021, the government filed its Motion for Emergency Stay and for Review of a Release Order in this matter. (Dkt. No. 7) That same day, this Honorable Court issued an order Staying the release order in this matter. A hearing on this matter is scheduled for October 22, 2021, at 11:00 a.m. via videoconference.[1]

## ARGUMENT

## Mr. Mattice Should Be Released on Conditions

Mr. Mattice is not a flight risk. He is completely dedicated to his family and his children. He would not do anything that would keep him from his loved ones permanently. He will not flee and will return to court when required.

Mr. Mattice is not a danger to the community. The allegations in the complaint occurred over 9 months ago. Mr. Mattice's strong family ties, strong community ties, his lack of criminal history and his lack of any violent history are all factors that demonstrate that conditions of release should be set for Mr. Mattice. The defense proposes the following conditions:

---

1 As part of the hearing, the court issued a minute order regarding the above-referenced video related to this matter, requiring, *inter alia*, that it be made available to the court by October 20, 2021, at 5:00 pm. Undersigned counsel has not yet received the video due to some technology challenges from the Public Defender's Office in Rochester, New York. Undersigned counsel would respectfully ask for the video to be made available to him as well (preferably disclosed at the same time it is disclosed to the court by the government. Undersigned counsel can be reached by the information provided in the signature block of this pleading below.

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

(5) The defendant must:

  (a) submit to supervision by U.S. Pretrial and report for supervision immediately upon release.

  (b) continue or actively seek employment.

  (c) continue or start an education program.

  (d) surrender any passport to the Clerk of the Court.

  (e) not obtain a passport or other international travel document.

  (f) not possess a firearm, destructive device, or other weapon.

  (g) not use alcohol.

  (h) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

  (i) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be

used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

(j) participate in a program of inpatient substance abuse therapy and counseling if directed by the pretrial services supervising officer.

(k) participate in the following location restriction program and comply with its requirements as directed:

Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer.

(l) submit to location monitoring as directed by the pretrial services supervising officer and comply with all of the program requirements and instructions provided.

(m) report within 72 hours to the pretrial services supervising officer every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

(n) submit to the computer internet monitoring program for any internet capable device accessed by the defendant.

## **Applicable Law**

As the Supreme Court has recognized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>United</u>

States. v. Salerno, 481 U.S. 739, 755 (1987). Excessive bail is prohibited. U.S. Const., amend. VIII. Consistent with this principle and the presumption of innocence,[2] the Bail Reform Act ("BRA") "generally favors" that a defendant be granted pretrial release. United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). "In applying the [§ 3142] factors to any particular case… it is only a "limited group of offenders" who should be denied bail pending trial." United States v. Shakur, 817, F.2d 189, 195 (2d Cir. 1987) (citations omitted). Pretrial detainment may not be used as punishment. Bell v. Wolfish, 441 U.S. 520, 536-537 (1979); Salerno, 481 U.S. at 749. Indeed, the BRA requires that the Court impose the "least restrictive" means of ensuring the appearance of the person and safety to the community. 18 U.S.C. § 3142(c)(1)(B).

In passing the BRA, Congress sought to detain fewer people prior to trial, not more. While fully aware that sentencing exposure is overwhelming for most individuals accused in the federal system, Congress still crafted a law acknowledging that detention is only appropriate for that "small but identifiable group of particularly dangerous defendants." United States v. Singleton, 182 F.3d 7,

---

2 See also, Betterman v. Montana, ____ U.S. ____, 136 S. Ct. 1609, 1614 (2016) (recognizing the constitutional speedy trial right's implementation of the presumption of innocence by "prevent[ing] undue and oppressive incarceration prior to trial" (internal citations omitted)).

13 (D.C. Cir. 1999) (quoting S. Rep. No. 98-225, at 6 (1984)). To further this goal of less pretrial detention, Congress restricted the government's ability to even request detention. Specifically, the BRA provides that the government may request a bail hearing only if certain conditions in § 3142 are present—e.g., the defendant is charged with a crime of violence, faces a life sentence, death, or a drug offense with a 10-year or greater penalty, or poses a "serious risk" that he will "flee" or "obstruct justice." See, 18 U.S.C. § 3142(f)(1), (2). As the D.C. Circuit has recognized:

> Detention until trial is relatively difficult to impose. First, a judicial officer must find one of six circumstances triggering a detention hearing. See 18 U.S.C. § 3142(f). Absent one of these circumstances, detention is not an option. *See, e.g.,* <u>United States v. Ploof</u>, 851 F.2d 7, 11 (1st Cir. 1988). Second, assuming a hearing is appropriate, the judicial officer must consider several enumerated factors to determine whether conditions short of detention will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). The judicial officer may order detention if these factors weigh against release.

> *Singleton*, 182 F.3d at 9.

 "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" <u>United States v. Vasquez-Benitez</u>, 919 F.3d 546, 550 (D.C. Cir. 2019). Under the BRA, the court must grant pretrial release unless the accused is a serious flight risk or a danger to the community, and the Court determines release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.

In assessing whether pretrial detention or release is warranted, the judicial officer must "take into account the available information concerning" the following four factors: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *see* United States v. Chrestman, 525 F. Supp. 3d 14 (D.D.C. Feb. 26, 2021).

The weight of the evidence against the defendant is the least among the detention factors a District Court should consider, because it is counterbalanced by the presumption of innocence. United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985).

**a. Mr. Mattice is Not a Serious Flight Risk**

Risk of flight under the BRA must be established by a preponderance of the evidence. United States v. Simkins, 826 F.2d 94, 96 (D.C. Cir. 1987). Mr. Mattice

is 28 years old and has never been convicted of a crime. He has one prior traffic infraction from 2016 for driving while ability impaired. Mr. Mattice has lived in Rochester almost his entire life He is a graduate of Brockport High School and is a trained mechanic. He has previously worked at Monroe Muffler and Mavis Tires.

His fiancée, children, parents, grandparents, siblings, aunts, uncles, and cousins all reside in the Rochester, New York region. Many of his family members were present at the detention hearing in support of Mr. Mattice. Mr. Mattice is a family man and stay-at-home dad. His entire life revolves around his children. Mr. Mattice is in a long-term relationship with his fiancée Ashley Coates. They have known each other since high-school, and they have a 4-year-old son together. Ms. Coates is a supervisor in the Surgical Pathology unit at Strong Memorial Hospital. Because she is considered an essential employee, Ms. Coates has worked throughout the pandemic.

During the pandemic, and last school year, Mr. Mattice stayed home with his two children: his 4-year-old son Titus and his 11-year-old daughter, Kylie. Kylie's classes were remote for the 2020 school year. Because Mr. Mattice was home, he was able to help her with her schoolwork and logging into her classes each day. Kylie is now back in school full-time. Mr. Mattice has remained at home to raise his son. He spends every day with Titus and also watches his 2-year-old nephew at least

three days a week. His daughter Kylie is with him every weekend and some evenings during the week. He is very close to both of his children. Mr. Mattice takes care of the home and kids while his fiancée works. His incarceration makes it difficult for his fiancée to work and take care of her family. The cost of daycare is expensive; this is among the reasons Mr. Mattice became a stay-at-home dad.

Mr. Mattice's work history also includes working for his cousin Kyle in 2018. Kyle describes Mr. Mattice as reliable, always putting his best foot forward to provide for his family and putting in long days, rain or shine. Kyle credits his cousin with helping him to build a successful business.

Mr. Mattice was aware for 9 months that the FBI was arresting people involved in the January 6th events at the Capitol. He did not run. Instead, he stayed at his known address with his family. Based on the foregoing it is clear Mr. Mattice is not a risk of flight.

**b.  Mr. Mattice does not pose a continuous danger to the community.**

The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *Simkins*, 826 F.2d at 96. This requires a "high degree of certainty." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). The government must prove that no condition or combination of conditions will reasonably assure the safety of another person, or the

community. 18 U.S.C. § 3142(e).

In support of their motion for detention the government proffered that Mr. Mattice sent and received text messages about the January 6th events at the Capitol. The messages were found on a phone seized because of a search of Mr. Mattice's home. The government proffered that Mr. Mattice's fiancée told the FBI the phone belonged to Mr. Mattice. This was the only allegation proffered by the government connecting Mr. Mattice to the phone. They did not establish that Mr. Mattice used the phone or was the only person to have access to the phone. Therefore, the Court should give little weight to this proffered evidence

Among the messages on the phone was a list of items it is alleged Mr. Mattice's companions planned to bring to the rally. The message listed "long-sleeves, gloves, knife, batons, pepper spray, ass-kicking boots." The government alleged these weapons were brought to use against law enforcement. The message could equally establish that these items were brought as means of individual protection against anti-Trump protestors.

It is further alleged Mr. Mattice attempted to assault Capitol police officers by spraying a chemical agent in the direction of where officers were standing. Video footage provided to the Court purports to show Mr. Mattice spraying a substance in the direction of Capitol police. The person alleged to be Mr. Mattice is holding a

canister and pointing it inside of the tunnel for approximately 10 seconds. Shortly after he falls back into the crowd and just stands there.

The complaint further alleged Mr. Mattice identified himself as "Cody from Rochester" in another video and stated, "I'm not trying to fight nobody, I got pushed…." Mr. Mattice did not attend the rally with the intention of fighting.

Even when dealing with the enormity of the January 6th storming of the Capitol, each detention case must be evaluated on its own circumstances. *Chrestman*, supra at 20; *see, e.g.*, United States v. Griffin, No.1:21-cr-00092, Order Setting Conditions of Release, dated Feb. 5, 2021, Doc. 13 (D.D.C. 2021) (pretrial release of a Capitol riot defendant, a leader in a New Mexico organization, "Cowboys for Trump," who after January 6th posted on social media an intention to return to the Capitol, warning, "there's gonna be blood running out of that building" (*see* Dkt. No. 11 at 2)).

Mr. Mattice did not engage in any advance planning to attack law enforcement. He did not verbally threaten others or advocate political violence either before or after January 6th. He is not a member of any anti-government organizations. In United States v. Klein, pretrial release was granted to a Capitol defendant who was alleged to have assaulted officers:

…he does not pose no continuing danger, as he contends, given his

demonstrated willingness to use force to advance his personal beliefs over legitimate government objectives. But what future risk he does present can be mitigated with supervision and other strict conditions on his release.

United States v. Klein, ___ F. Supp. 3d at ___, 2021(D.D.C. April 12, 2021) WL 1377128, at *10.

In *Klein*, the defendant was charged with a violation of 18 U.S.C. §§ 111(a)(1) and (b). The Court found the government had shown by clear and convincing evidence that Klein employed persistent force against multiple officers, repeatedly pressing a stolen riot shield against them to gain entry into the Capitol building and stop the certification of the election. *Id.* at *11. Here it is alleged that Mr. Mattice sprayed an unknown chemical agent in the direction where the police were standing. The officers involved appeared to be dressed in riot gear and wearing gas masks.

Similar to *Klein*, the government in this case has not articulated that Mr. Mattice poses any concrete "threat," now that "the transition [of power] has come and gone." *Klein* at *12, citing United States v. Munchel, 991 F.3d 1273 at 1288, explaining that defendants' purported "danger to 'act against Congress'" required additional justification:

Indeed, while security threats around the Capitol are always present, the specific concerns in the wake of the January 6 events over future protests and violent attacks on the government—on January 20, March 4, and otherwise—have dissipated to some degree now three months later, even though troops and defenses remain present. As the majority emphasized in Munchel, the threat to public safety

must be continuing and prospective.

*Id.* at *12.

Mr. Mattice should be released. The government has not shown by clear and convincing evidence that no condition or combination of conditions of release could reasonably assure the safety of any other person and the community.

## Conclusion

The defense respectfully requests that the Court deny the government's motion for detention and release Mr. Mattice on conditions.

Respectfully submitted,

CODY MATTICE
By Counsel

    /s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Attorney for Cody Mattice
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

14

## <u>Certificate of Service</u>

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 20th day of October, 2021, which will send a notification of such filing (NEF) to the following to all counsel of record.

    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Cody Mattice
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com