UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Case No. 1:21-mj-00622 |
| **v.** : | |
| : | |
| **CODY MATTICE,** : | |
| : | |
| **Defendant.** : | |

### REPLY IN SUPPORT OF MOTION FOR REVIEW OF A RELEASE ORDER

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this Reply in support of its Motion for Review of a Release Order.

Yesterday, the defendant filed a Supplement to his Response to the government's Motion, to which he attached seventeen letters in support of his request for pretrial release.[1] These letters were written by friends and family members who attest to the defendant's good character and argue that he does not pose a danger to the community. The defendant's efforts to support his family and care for his children, as described in these letters, are a credit to him. Notably, however, not a single letter speaks to the defendant's participation in the riot on January 6, 2021. In fact, none of the letters even acknowledge that the riot happened. This is especially significant because several of authors knew full well that the defendant was present at, and participated in, the riot. Indeed, it appears the defendant bragged about his violent conduct to his fiancée, who wrote the letter at Exhibit B; his aunt, who wrote the letter at Exhibit I; and his brother, who wrote the letter at Exhibit

---

[1] When the government downloaded this Supplement, the final exhibit (Exhibit Q) did not appear in the list of items to be downloaded. Earlier today, the government informed defense counsel that this exhibit may not have properly been filed.

1

M. He also spoke about the riot after the fact with his mother, who wrote the letter at Exhibit P. (Dkt. 11 at 17-18; Dkt. 14 at 2-3.)

Other friends and family members, too, knew of the defendant's participation in the riot. For instance, at 3:50 p.m. on January 6, the defendant received text messages from "Shae"—likely his sister, who wrote the letter at Exhibit Q—asking "Did you get in the capitol" and instructing him to "Get videos" and "Go on Ashley's [likely his fiancee's] Facebook and go on Facebook Live recording everything so we can all see it." The defendant received this message shortly before climbing over members of the crowd to reach the Lower West Terrace tunnel and deploy chemical spray against police. (Dkt. 7 at 11-15.) On January 8, 2021, the defendant shared evidence of his participation in the riot by way of a text message with "Casey"—likely his brother—in which the defendant sent a picture and explained "This is me in the background holding my camera above the crowd in the center lmao," to which "Casey" replied "Lmao hell yea." The defendant further explained that "Lol I found it on a youtube video so far it's the only one I've found with me in it." In short, it appears that the defendant's family knew about, supported, and wanted to see proof of his riotous conduct.

The Court should note two other assertions from these letters. Mr. Choate, who wrote the letter at Exhibit C, stated that "Cody doesn't serve this." Ms. Gillette, who wrote the letter at Exhibit K, stated that "I do not believe what Cody is going through is just in any way." It is unclear whether they mean that the criminal prosecution is unjust and undeserved, or merely the threat of incarceration pending trial. But likely, they knew the defendant to have participated at a violent riot at the U.S. Capitol. Mr. Choate wrote that he and his sister, the defendant's fiancée, "tell each other everything"; Ms. Gillette wrote that she and the defendant have known each other for 15 years. Yet in their letters, they write about the criminal case as if it is something which suddenly

2

happened to the defendant for no reason, rather than an understandable consequence of his participation in a very public, and very violent, event.

The Court should not credit any claims about the defendant's non-violent character or lack of danger to the community made by people who encouraged him to riot, supported his choice to do so, or condoned his behavior after-the-fact. This would include at least his mother, brother, sister, aunt, and fiancée. The Court should further look with a skeptical eye at the balance of the letters, none of which mention the riot. They either were written by people who did not know of the defendant's conduct or were written by people who did know of this conduct but chose to remain silent about it—possibly out of fear of publicly revealing their support for the riot. In either case, whether due to lack of knowledge or bias, the authors' opinions due little to help the Court assess the defendant's future danger to the community.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        UNITED STATES ATTORNEY

        */s/ Michael J. Romano*
        MICHAEL J. ROMANO
        Trial Attorney / Detailee
        IL Bar No. 638
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 307-6691
        michael.romano@usdoj.gov